**BLANK ROME LLP**
Daniel J. Brown (DB 7458)
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000
Attorneys for Plaintiff Vestal Venture Capital

**07 CIV 9936**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------ X

VESTAL VENTURE CAPITAL,

                                            Plaintiff,

                    -against-

PRIDE BUSINESS DEVELOPMENT HOLDINGS, INC.
and MICHAEL M. MARKOW,

                                            Defendants.

------------------------------ X

        Plaintiff, Vestal Venture Capital, by its attorneys Blank Rome LLP, for its complaint alleges as follows:

## NATURE OF THE ACTION

        1.        This is a diversity action arising under New York common law in which plaintiff, Vestal Venture Capital ("Vestal"), seeks damages in the principal amount of $525,000.00, plus interest, attorney's fees and costs in connection with defendant's, Pride Development Holdings, Inc. ("Pride"), separate breaches of contracts which required it to make principal payments of $300,000.00, $50,000.00 and $175,000.00, together with interest pursuant to certain promissory notes.  In addition, Vestal seeks damages in the amount of $525,000.00 plus interest, attorney's fees and costs against defendant, Michael M. Markow ("Markow"), as a personal guarantor under the aforesaid promissory notes.

## THE PARTIES

2.    Vestal is a New York general partnership with a principal place of business located at 92 Hawley Street, Binghamton, New York. None of Vestal's partners reside in the State of California or the State of Nevada.

3.    Pride is a Nevada corporation with a principal place of business located at 1230 Calle Suerte, Camarillo, California.

4.    Markow is an individual residing at 2533 North Carson Street, Carson City, Nevada and who is the Chairman and Chief Executive Officer of Pride.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 by virtue of complete diversity of citizenship between the parties and because the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.

6.    This Court has in personam jurisdiction over the defendants because the defendants transacted business in the State of New York in connection with the loan transactions giving rise to this action.

7.    Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTS

### The August 8, 2005 Promissory Note ($300,000.00)

8.    On or around August 8, 2005, Vestal loaned Pride the principal sum of $300,000.00 in exchange for a promissory note providing for repayment of the principal amount plus interest (the "August 8, 2005 Note"). (A true and correct copy of the August 8, 2005 Note is annexed hereto as Exhibit A).

9.    Pursuant to an April 24, 2007 Amendment to the August 8, 2005 Note (the "Amendment to the August 8, 2005 Note"), Pride and Vestal agreed to decrease the applicable

-2-

interest rate on the Note from 12% to 10% subject to a default interest rate of 18% which would be imposed if Pride failed to make an interest payment of $10,000.00 by April 8, 2007 or otherwise defaulted under the terms of such note. (A true and correct copy of the Amendment to the August 8, 2005 Note is annexed hereto as Exhibit B).

10.     The Amendment to the August 8, 2005 Note further provided that "a default under this Amendment shall be deemed to be an Event of Default."

11.     Vestal has performed all of its obligations under the August 8, 2005 Note and the Amendment to the August 8, 2006 Note.

12.     Pride has willfully failed to make the $10,000.00 interest payment as required under the Amendment to the August 8, 2005 Note or any other payment under such note.

13.     Vestal hereby accelerates the August 8, 2005 Note and amendment thereto and declares the entire amount due and owing to be immediately due and payable.

14.     Pursuant to Section 5.4 of the August 8, 2005 Note and Section 10(b) of the Amendment to the August 8, 2005 Note, Pride agreed to pay "all reasonable attorney's fees and costs" in connection with any action to enforce the August 8, 2005 Note and/or the Amendment to the August 8, 2005 Note.

15.     In November 2006, Markow executed and delivered a guaranty promising to pay the principal amount plus any interest thereon in the event Pride failed to honor the payment terms of the August 8, 2005 Note. (A true and correct copy of the Guaranty of the August 8, 2005 Note is annexed hereto as Exhibit C, internal exhibits omitted).

-3-

**The November 18, 2005 Promissory Note ($50,000.00)**

16.     On or around November 18, 2005, Vestal loaned Pride the principal sum of $50,000.00 in exchange for a note providing for repayment of the principal amount plus interest (the "November 18, 2005 Note"). (A true and correct copy of the November 18, 2005 Note is annexed hereto as Exhibit D).

17.     Attachment "A" to the November 18, 2005 Note includes a signed personal guarantee executed by Markow, promising to pay the principal amount plus any interest thereon in the event Pride failed to honor the payment terms of the November 18, 2005 Note.

18.     On April 24, 2007, Vestal and Pride amended the November 18, 2005 Note (the "Amendment to the November 18, 2005 Note"). (A true and correct copy of the Amendment to the November 18, 2005 Note is annexed hereto as Exhibit E).

19.     Pursuant to paragraphs D(1)(a) and D(3) of the Amendment to the November 18, 2005 Note, Vestal agreed to a one-time waiver of Pride's prior defaults under the November 18, 2005 Note on the condition that Pride pay all interest accrued on the November 18, 2005 Note through March 31, 2007 no later than April 8, 2007.

20.     Pursuant to Section D(2) of the Amendment of the November 18, 2005 Note, the maturity date of the November 18, 2005 Note was extended until May 15, 2007.

21.     In addition, the Amendment of the November 18, 2005 Note provided that the applicable interest rate shall be increased from 10% to 18% in the event of any default under the November 18, 2005 Note or the Amendment to the November 18, 2005 Note.

22.     Pursuant to Section 5.4 of the November 18, 2005 Note and Section 6(b) of the Amendment to the November 18, 2005 Note, Pride agreed to pay "all reasonable

-4-

attorney's fees and costs" in connection with any action to enforce the November 18, 2005 Note and/or the Amendment to the November 18, 2005 Note.

23.    In November 2006, Markow executed and delivered a renewed guaranty promising to pay the principal amount plus any interest thereon in the event Pride failed to honor the payment terms of the November 18, 2005 Note. (A true and correct copy of the Guaranty of the November 18, 2005 Note is annexed hereto as Exhibit C, internal exhibits omitted).

24.    Vestal has performed all of its obligations under the November 18, 2005 Note and the Amendment to the November 18, 2005 Note.

25.    Pride failed to make the interest payment as required by the Amendment to the November 18, 2005 Note.

26.    Pride has willfully failed to make the interest payment as required under Section D(1)(a) of the Amendment of the November 18, 2005 Note.

27.    Pride has willfully failed to repay the principal plus any interest as required by the terms of the Amendment of the November 18, 2005 Note.

28.    Vestal hereby accelerates the November 15, 2005 Note and amendment thereto and declares the entire amount due and owing to be immediately due and payable.

29.    Markow has willfully failed to honor the terms of the Guaranty to the November 18, 2005 Note and amendment thereto.

### The April 10, 2007 Amended, Restated and Consolidated Renewal Promissory Note $175,000)

30.    In an Amended, Restated and Consolidated Renewal Promissory Note dated April 10, 2007 (the "April 10, 2007 Consolidated Note"), Pride amended a prior note given to Vestal on April 6, 2007 in the principal amount of $175,000.00. (A true and correct copy of the April 10, 2007 Consolidated Note is annexed hereto as Exhibit F).

31.    Pursuant to the April 10, 2007 Consolidated Note, Vestal loaned Pride the principal sum of $175,000.00 at an interest rate of 18% per annum.

32.    The April 10, 2007 Consolidated Note included a maturity date upon the earlier of (i) May 7, 2007 or (ii) "one business day following the closing of a funding with Alpha Capital or any of its affiliates, successors or agents."

33.    In addition, the April 10, 2007 Consolidated Note included a five percent (5%) service charge for any payment of interest of principal that is not made when due.

34.    Paragraph (m) of the April 10, 2007 Consolidated Note provides that in the event of default, Pride agrees to pay "reasonable attorneys' fees plus costs" to Vestal in connection with any enforcement action.

35.    On or about April 10, 2007, Markow signed a personal guaranty with respect to the April 10, 2007 Consolidated Note, agreeing to guarantee performance of all of Pride's obligations under the April 10, 2007 Consolidated Note. (A true and correct copy of the April 10, 2007 Guarantee signed by Markow is annexed hereto as Exhibit G).

36.    Under such Guaranty, Markow agreed to, among other things, pay to Vestal "all costs and expenses (including attorney's fees)" incurred in connection with enforcing the Guaranty.

37.    Vestal has performed all of its obligations under the April 10, 2007 Consolidated Note.

38.    Pride has willfully failed to repay the principal plus any interest with respect to the April 10, 2007 Consolidated Note, and the time for doing so has expired.

39.    Markow has willfully failed to honor the terms of the guaranty he executed with respect to the April 10, 2007 Consolidated Note.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST PRIDE ONLY
### (BREACH OF CONTRACT)
### (The August 8, 2005 Note)

40.    Vestal repeats and realleges the allegations of paragraphs 1-39 as if fully set forth herein.

41.    Pursuant to the August 8, 2005 Note and the Amendment to the August 8, 2005 Note, Pride was required to pay Vestal a $10,000.00 interest payment on or before April 8, 2007.

42.    Pride failed to pay Vestal the $10,000.00 interest payment on or before April 8, 2005 and said sum remains due and outstanding.

43.    As a result, Pride is in default of the August 8, 2005 Note and the Amendment to the August 8, 2005 Note.

44.    Pride owes Vestal the principal sum of $300,000.00, together with interest at eighteen percent (18%) from August 8, 2005, plus atttorney's fees and costs.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST PRIDE ONLY
### (BREACH OF CONTRACT)
### (the November 18, 2005 Note)

45.    Vestal repeats and realleges the allegations of paragraphs 1-44 as if fully set forth herein.

46.    Pursuant to the November 18, 2005 Note and the Amendment to the November 18, 2005 Note, Pride was required to pay Vestal all interest accrued on the November 18, 2005 Note through March 31, 2007 no later than April 8, 2007.

47.    Pride failed to pay any of the interest on the November 18, 2005 Note.

48.    To date, the entire principal amount and interest on the November 18, 2005 Note and Amendment to the November 18, 2005 Note remain due and outstanding.

49.     Pride owes Vestal the principal sum of $50,000.00, together with interest at eighteen percent (18%) from November 18, 2005, and attorney's fees and costs.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST PRIDE ONLY
### (BREACH OF CONTRACT)
### (The April 10, 2007 Consolidated Note)

50.     Vestal repeats and realleges the allegations of paragraphs 1-49 as if fully set forth herein.

51.     Pursuant to the April 10, 2007 Consolidated Note, Pride was required to pay to Vestal the sum of $175,000.00 plus interest at eighteen percent (18%) no later than May 7, 2007.

52.     Pride has failed to pay the principal and interest as required.

53.     Pride owes Vestal the principal sum of $175,000.00, together with interest at eighteen percent (18%) from April 10, 2007, a five percent (5%) service charge, and attorney's fees and costs.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST MARKOW ONLY
### (BREACH OF CONTRACT)
### (Guaranty of the August 8, 2005 Note)

54.     Vestal repeats and realleges the allegations of paragraphs 1-53, as if fully set forth herein.

55.     Markow has failed to honor the terms of the personal guaranty he executed with respect to the August 8, 2005 Note and Amendment to the August 8, 2005 Note.

56.     Pursuant to the guaranty, Markow owes Vestal the principal sum of $300,000.00, together with interest at eighteen percent (18%) from August 8, 2005, and attorney's fees and costs.

### AS AND FOR A FIFTH CAUSE OF ACTION AGAINST MARKOW ONLY
### (BREACH OF CONTRACT)
### (Guaranty of the November 18, 2005 Note)

57.    Vestal repeats and realleges the allegations of paragraphs 1-56, as if fully set forth herein.

58.    Markow has failed to honor the terms of the personal guaranty he executed with respect to the November 18, 2005 Note and Amendment to the November 18, 2005 Note.

59.    Pursuant to the guaranty, Markow owes Vestal the principal sum of $50,000.00, together with interest at eighteen percent (18%) from November 18, 2005, and attorney's fees and costs.

### AS AND FOR A SIXTH CAUSE OF ACTION AGAINST MARKOW ONLY
### (BREACH OF CONTRACT)
### (Guarantee of the April 10, 2007 Consolidated Note)

60.    Vestal repeats and realleges the allegations of paragraphs 1-59, as if fully set forth herein.

61.    Markow has failed to honor the terms of the personal guaranty he executed with respect to the April 10, 2007 Consolidated Note.

62.    Pursuant to the guaranty, Markow owes Vestal the principal sum of $175,000.00, together with interest at eighteen percent (18%) from April 10, 2007, plus a five percent (5%) service charge, and attorney's fees and costs.

**WHEREFORE**, plaintiff, Vestal Venture Capital, respectfully requests that this Court: (i) enter judgment in favor of Vestal and against Pride in the amount of $300,000.00 plus 18% interest from December 9, 2006 pursuant to the August 8, 2005 Note and the Amendment to the August 8, 2005 Note; (ii) enter judgment in favor of Vestal and against Pride in the amount of $50,000.00 plus 18% interest from November 18, 2005 pursuant to the November 18, 2005 Note and the Amendment to the November 18, 2005 Note; (iii) enter judgment in favor of Vestal

and against Pride in the amount of $175,000.00 plus 18% interest from April 10, 2007, together

with a 5% service charge, pursuant to the April 10, 2007 Consolidated Note less a $15,000.00

payment made in September 2007; (iv) enter judgment in favor of Vestal and against Markow in

the amount of $300,000.00 plus 18% interest from December 9, 2006 pursuant to the personal

guaranty to the August 8, 2005 Note and the Amendment to the August 8, 2005 Note; (v) enter

judgment in favor of Vestal and against Markow in the amount of $50,000.00 plus 18% interest

from November 18, 2005 pursuant to the personal guaranty to the November 18, 2005 Note and

the Amendment to the November 18, 2005 Note; (vi) enter judgment in favor of Vestal and

against Markow in the amount of $175,000.00 plus 18% interest from April 10, 2007, together

with a 5% service charge, pursuant to the personal guaranty to the April 10, 2007 Consolidated

Note; (vii) award Vestal its attorney's fees and costs against Pride and Markow; and (viii) award

Vestal such other and further relief as this Court deems just and proper.

Dated:    New York, New York
          November 9, 2007

**BLANK ROME LLP**

By: _____

     Daniel J. Brown (DB 7458)
The Chrysler Building
405 Lexington Ave.
New York, New York 10174
(212) 885-5000
*Attorneys for Plaintiff Vestal Venture Capital*

Kevin P. Mason, Esq.
*Of Counsel*
BLANK ROME LLP
1200 N. Federal Highway, Suite 417
Boca Raton, Florida 33432
Telephone:  (561) 417-8100
Facsimile:  (561) 417-8101

123052.00102/6551642v.4

# EXHIBIT A

NEITHER THIS PROMISSORY NOTE NOR ANY OF THE SECURITIES ISSUABLE HEREUNDER HAS BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), AND MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED IN THE ABSENCE OF A REGISTRATION STATEMENT IN EFFECT WITH RESPECT TO THE SECURITIES, OR DELIVERY TO THE COMPANY OF AN OPINION OF COUNSEL IN FORM AND SUBSTANCE SATISFACTORY TO THE COMPANY THAT SUCH OFFER, SALE OR TRANSFER, PLEDGE OR HYPOTHECATION IS IN COMPLIANCE WITH THE ACT OR UNLESS SOLD IN FULL COMPLIANCE WITH RULE 144 UNDER THE ACT.

## SUBORDINATED 12% PROMISSORY NOTE

US$300,000

August 8, 2005
Encino, California

PRIDE BUSINESS DEVELOPMENT HOLDINGS, INC., a Nevada corporation (the "Company"), for value received, hereby promises to pay to Vestal Venture Capital (the "Holder"), the principal amount of Three Hundred Thousand Dollars (US$300,000) (the "Principal Amount"), together with interest on the unpaid amount thereof in accordance with the terms hereof, from the date hereof until paid or converted in accordance with the terms hereof.

1.    Promissory Note (the "Note")

1.1    Interest Rate. Subject to the provisions of Subsection 1.1.1 and Subsection 2.1 hereof, the rate of interest hereunder (the "Interest Rate") shall be twelve percent (12%) per annum, which shall be computed on the basis of a three hundred sixty-five (365) day year for the actual number of days elapsed and shall be payable in arrears and in cash.

1.1.1    The Interest Rate shall be subject to increase in accordance with the provisions of this Subsection 1.1.1. In the event that the Company does not repay the Principal Amount plus all interest due thereon within one hundred and eighty (180) days of the date hereof, the Interest Rate shall automatically be increased to thirteen percent (13%). In the event that the Company does not repay the Principal Amount plus all interest due thereon within two hundred and seventy (270) days of the date hereof, the Interest Rate shall automatically be increased to fourteen percent (14%).

1

      1.2     Payments. The Principal Amount plus all accrued but unpaid interest thereon shall be due and payable upon the first to occur of the following events (the "Due Date"): (i) Six (6) months from the date hereof; or (ii) the completion and funding of an equity financing of no less than two million dollars (US$2,000,000). Interest on the Principal Amount shall accrue and be payable in arrears and in cash. Payment and any prepayment under Section 1.3 below shall be made at the offices or residence of the Holder, or at such other place as the Holder shall have designated to the Company in writing, in lawful money of the United States of America.

      1.3     Prepayment. Prepayment may be made by the Company of the entire amount of the Principal Amount and all accrued but unpaid interest without penalty at any time.

      2.     Shares and Warrants

      2.1 Issuance of Shares: The Company will issue one hundred and forty thousand (140,000) shares of unregistered Company common stock, US$.001 par value (the "Shares") to Holder for each one hundred thousand dollars (US$100,000) of Notes purchased and in exchange for one hundred dollars (US$100) of the interest expense set forth in Subsection 1.1 hereof being converted to purchase the Shares. As promptly as practicable, the Company at its expense will issue and deliver to the Holder of this Note a certificate or certificates evidencing the number of full shares of Common Stock issuable to Holder in accordance with the terms and conditions of this Note. No fractional shares shall be issued. In lieu of any fractional share to which such Holder would otherwise be entitled, such fractional share shall be rounded to the nearest whole share

      2.2 Issuance of Warrants. If the Note is not repaid in 6 months from the date of the issue, the Company will issue warrants to purchase twenty-five thousand (25,000) additional Shares at US$0.75 per share for every one hundred thousand dollars (US$100,000) of Notes subscribed. The term of the warrants will be 3 years from the date of issue. If the Note is not repaid in nine (9) months from the date of the issue, the Company will issue additional warrants to purchase twenty-five thousand (25,000) additional Shares at US$0.75 per share for every one hundred thousand dollars (US$100,000) of Notes subscribed. The term of the warrants will be three (3) years from the date of issue.

      2.3 Registration Rights. The Company will file a registration statement within 9 months of issuance of the Note and include all the underlying shares of common stock issued for the Note in accordance with Section 2.1 hereinabove and any exercise of the warrants referenced in Section 2.2 hereinabove. The Holder will have piggy-back registration rights if the Company files registration for any other Shares before this 9 month period. Piggy-back registration will be with the acceptance of the underwriters as selected by the Company.

      3.     Security. The Principal Amount, including any and all interest due thereon, will be secured by a lien on all assets of the Company, which will be subordinate to those already existing and to any letter of credits issued to support working capital needs of the Company. The Company will pay the expenses of filing and recording the liens under this Note.

4.      Events of Default. The Holder may declare the entire amount of the Principal Amount of this Note and all accrued but unpaid interest thereon immediately due and payable, effective upon written notice to the Company as described above, if any of the following events shall occur (each, an "Event of Default"):

4.1     Payment of Note. Default in the payment of this Note when due.

4.2     Bankruptcy, Insolvency, Etc. Commenced by the Company. If the Company:

4.2.1   shall commence any proceeding or any other action relating to it in bankruptcy or seek reorganization, arrangement, readjustment of its debts, dissolution, liquidation, winding-up, composition or any other relief under the United States Bankruptcy Act, as amended, or under any other insolvency, reorganization, liquidation, dissolution, arrangement, composition, readjustment of debt or any other similar act or law, of any jurisdiction, domestic or foreign, now or hereafter existing;

4.2.2   shall admit its inability to pay its debts as they mature in any petition or pleading in connection with any such proceeding;

4.2.3   shall apply for, or consent to or acquiesce in, an appointment of a receiver, conservator, trustee or similar officer for it or for all or substantially all of its assets and properties;

4.2.4   shall make a general assignment for the benefit of creditors; or

4.2.5   shall admit in writing its inability to pay its debts as they mature.

4.3     Bankruptcy, Insolvency, Etc. Commenced Against the Company. If any proceedings are commenced or any other action is taken against the Company in bankruptcy or seeking reorganization, arrangement, readjustment of its debts, dissolution, liquidation, winding-up, composition or any other relief under the United States Bankruptcy Act, as amended, or under any other insolvency, reorganization, liquidation, dissolution, arrangement, composition, readjustment of debt or any other similar act or law, of any jurisdiction, domestic or foreign, now or hereafter existing; or a receiver, conservator, trustee or similar officer for the Company or for all or substantially all of its assets and properties is appointed; and in each such case, such event continues for ninety (90) days undismissed, unbonded and undischarged.

4.4     Material Breach. Any material breach of any representation, warranty, covenant or obligation of the Company under this Note that is not cured within thirty (30) days after receipt by the Company of written notice from the Holder.

3

5.    <u>Miscellaneous</u>.

5.1    <u>Transfer of Note</u>. This Note shall not be transferable or assignable in any manner and no interest shall be pledged or otherwise encumbered by the Holder without the express written consent of the Company, and any such attempted disposition of this Note or any portion hereof shall be void ab initio and of no force or effect.

5.2    <u>Titles and Subtitles</u>. The titles and subtitles used in this Note are for convenience only and are not to be considered in construing or interpreting this Note.

5.3    <u>Notices</u>. Any notice, demand, or other communication which any party hereto may elect or be required to give hereunder shall be given by fax or overnight courier, and shall be deemed to have been received, in the case of a fax, on the date such fax was sent if confirmation of transmission is received by the sender, and in the case of overnight courier, on the next business day. All notices shall be sent to the parties at the addresses provided on the signature page set forth below.

5.4    <u>Attorney's Fees</u>. If any action at law or in equity is necessary to enforce or interpret the terms of this Note, the prevailing party shall be entitled to reasonable attorney's fees, costs and disbursements in addition to any other relief to which such party may be entitled.

5.5    <u>Amendments and Waivers</u>. Any amendment or waiver of the terms, conditions, right and obligations set forth herein shall be binding only with the written consent of the Company and the Holder.

5.6    <u>Severability</u>. If one or more provisions of this Note are held to be unenforceable under applicable law, such provision shall be excluded from this Note and the balance of the Note shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms.

5.7    <u>Governing Law</u>. This Note shall be governed by and construed and enforced in accordance with the laws of the State of California, without give effect to its conflicts of laws principles.

5.8    <u>Counterparts</u>. This Note may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

[SIGNATURE PAGES FOLLOW]

4

Dated: August 23, 2005

PRIDE BUSINESS DEVELOPMENT HOLDINGS, INC.
a Nevada corporation

By: _____
Name: Ari L. Markow
Title: President

Address For Notices:
15760 Ventura Blvd.
Suite 1020
Encino, California 91436
Attention: Ari L. Markow, President
Fax Number: 818-206-0053

*Acknowledged and Agreed:*

Vestal Venture Capital

By:_____
Name: _Allan R. Lyons_____
Title:_____
Date:_____

Address for Notices:
Vestal Venture Capital
2521 Vestal Parkway East
Vestal, New York 13850
Attention: Allan R. Lyons
Fax Number: 607-729-6893

5

# EXHIBIT B

## AMENDMENT TO SUBORDINATED 12% PROMISSORY NOTE

This Amendment to the Subordinated 12% Promissory Note, dated August 8, 2005 (this "Amendment") is entered into as of April __, 2007, by and between VESTAL VENTURE CAPITAL, a New York partnership ("Holder") and PRIDE BUSINESS DEVELOPMENT HOLDINGS, INC., a Nevada corporation ("Borrower" of the "Company"), with respect to the following:

A.    Holder and Borrower have entered into that certain Promissory Note dated as of August 8, 2005, in the principal amount of $300,000 (as amended, restated, modified and supplemented from time to time, the "Note"). Capitalized terms used but not defined in this Amendment shall have the meanings given them in the Note.

B.    Borrower acknowledges that Events of Default have occurred and are continuing under the Note.

C.    Borrower has requested and been granted past extensions of the Note and has further requested a reduction in the interest rate charged under the Note, and Holder has agreed to amend the Note and waive existing Events of Default on the terms and conditions set forth herein.

D.    Holder and Borrower intend that this Amendment not be a restatement or replacement for the Note but rather a modification, amendment, update and supplement to the Note which will remain in full force and effect except for the provisions modified by this Amendment.

NOW, THEREFORE, in consideration of the foregoing and the terms and conditions hereof, the parties hereto agree as follows:

1.    **Amendments to Interest Rate.**

(a) Section 1.1 of the Note shall be modified as follows:

(i) the Interest Rate shall be decreased from the annual rate of twelve percent (12%) to an annual rate of ten percent (10%) on the entire unpaid Principal and accrued interest owing hereunder effective from December 8, 2006 through the Maturity Date, subject to a Default Interest Rate of 18% per annum commencing upon any Event of Default.

(b) Section 1.1.1 of the Note shall be deleted in its entirety and replaced with the provisions as follows:

(i) If an Interest Payment of $10,000 is not made on or before April 8, 2007 or if there is any default under any provisions of the Note or this Amendment, the Interest Rate specified in Section 1.1 shall be increased to 18% per annum computed on a basis of 365 days per year.

2.    **Extension of Maturity Date.** Section 1.2 of the Note is amended to delete the words "upon the first to occur of the following events (the "Due Date"): (i) Six (6)

123052.00102/50335732v.3

1

months from the date hereof; or (ii) the completion and funding of an equity financing of no less than two million dollars (US$2,000,000)" and insert the words "on June 30, 2007 (the "Due Date")."

        **3.**    **Waiver of Defaults.** Holder hereby waives any and all Events of Default through the date hereof. The waiver granted in this Amendment is a one-time waiver only, is a waiver only of the past Defaults, shall be limited strictly as written and shall not be deemed to constitute a waiver of any Defaults, except as expressly set forth herein.

        **4.**    **Amendment and Waiver Fee.** In consideration for the accommodations granted by Holder herein, Borrower hereby agrees to pay to Holder a nonrefundable Amendment and Waiver Fee equal to the value of 60,000 shares of Common Stock of the Borrower (the "Amendment Fee") as of the date of this Amendment. The Amendment Fee shall be paid on the execution date of this Amendment.

        **5.**    **Prepayment.** Borrower has the right to prepay the Note at any time without penalty of any kind. Should the Borrower repay to Holder all principal and interest due hereunder in full on or before April 8, 2007, then Holder shall transfer all of the shares of Common Stock received as the Amendment Fee pursuant to Section 4 herein to Borrower.

        **6.**    **Conversion Rights.** Section 2 of the Note shall be supplemented by the following provisions which shall be incorporated as Section 2.4 as follows:

        (a) The Holder of the Note is entitled, at his option and at any time, to exchange the principal amount of the Note or any portion of the principal amount hereof for shares of Common Stock, par value $.001 per share ("Conversion Stock"), of the Company, at the "Exchange Price", as in effect on the effective date of such conversion. The initial Exchange Price shall be equal to the lower of (i) $.50 (fifty cents) per share of the principal amount of this Note then outstanding for each share of Conversion Stock and (ii) a per share price equal to a discount of 30% to the average closing price of the common stock for the five day trading period immediately preceding notice from Holder of its desire to exercise its conversion rights hereunder. Notwithstanding the foregoing, the Exchange Price shall be subject to such adjustments, if any, as may be required by the provisions of Section 2.4(c) hereof. Such exchange may be made by Holder upon surrender of the Note to the Company with written notice to Company that the Holder of the Note elects to exchange the Note or a specified portion of the outstanding principal amount thereof (as above provided) hereof, specifying the name or names in which the shares of Conversion Stock deliverable upon such exchange shall be registered, with the address of such persons (and taxpayer identification number), and accompanied by proper cancellation or assignment hereof in blank and "investment letters" as reasonably required by the Company to comply with applicable law. The Holder shall be deemed the record owner of the Conversion Stock issuable upon such exchange as of the date such documents are properly so tendered for exchange into Conversion Stock as aforesaid.

        (b) Upon conversion of the principal amount hereof, the Holder shall be entitled, at its sole option, to receive either: (i) full payment, in cash, of all accrued and unpaid interest on the principal amount so converted, (ii) to treat such accrued and unpaid interest as outstanding principal hereunder, and exchange the same for Conversion Stock at the Exchange Price then in effect. If less than the full outstanding principal amount hereof is exchanged for Conversion

2

123052.00102/50335732v.3

Stock as aforesaid, then the Company shall return the original copy of the Note to the Holder upon such partial exchanged, legended appropriately to reflect the partial payment.

(c) In the case of (i) any reclassification or any change in the outstanding shares of the Conversion Stock issuable upon exchange of the Note (other than a change in par value, or from par value to no par value, or from no par value to par value) or as a result of a subdivision or combination, (ii) any consolidation or merger of the Company with or into another corporation, or (iii) any sale or conveyance to another corporation of the property of the Company as an entirety or substantially as an entirety, the Holder shall have the right thereafter to exchange such Note for the kind and amount of shares of stock and other securities or property as would be receivable immediately prior to such reclassification, change, sale or conveyance. The same shall apply to successive reclassifications and changes of shares of the Conversion Stock and to successive consolidations, mergers, sales or conveyances. The Exchange Price shall also be subject to adjustment if the shares of Common Stock of the Company are subdivided or combined. If the Company subdivides its outstanding shares of Common Stock into a greater number of shares, the Exchange Price in effect immediately prior to such subdivision shall be proportionately reduced; conversely, if the outstanding shares of Common Stock of the Company are combined into a smaller number of shares, the Exchange Price in effect immediately prior to such combination shall be proportionately increased.

7.    **Warrant Exercise Price.** Section 2.2 of the Note is hereby amended to reduce the exercise price on the exercise of each warrant to $.50 per share. Additionally, Borrower hereby resets the exercise price to $.50 per share with respect to any outstanding warrants held by Holder in the Company.

8.    **Registration Rights.** Section 2.3 of the Note shall be deleted in its entirety and replaced with the provisions as follows:

(a)    The Holder shall have, with respect any Common Stock underlying any warrants granted to Holder at any time (the "Warrant Shares")(the "Warrant Shares" are referred to herein as the "Registrable Securities"), at least as favorable as rights with respect to the registration of such Registrable Securities under the federal and state securities laws as are available or granted to any other holder of Preferred Stock or Common Stock of the Company, presently or at any future time. Without limiting the generality of the foregoing, in the case of any proposed registration or qualification (other than a Form S-8, Form S-14, or comparable registration) of the equity securities of Company under the Securities Act of 1933, as amended (hereinafter the "Act") or similar federal statute then in effect, at any time while this Note is outstanding or Holder owns Registrable Securities, Company will give at least twenty (20) days' prior written notice to Holder or its assignee. To the extent requested by Holder or its assignee in writing within ten (10) days after receipt of any such notice, Company will use its best efforts, at its expense, to register all of the Registrable Securities under such act or statute concurrently with the registration or qualification of such other stock, in a manner appropriate to permit distribution of such Registrable Securities by such Holder or assignee upon the terms of such offering, subject, however, to any requirements of the underwriter responsible for such registration and offering. To the extent the number of shares included in such registration statement are limited by the underwriter, Holder or its assignee who have received Registrable Securities pursuant to

3

the right of exchange provided herein shall be entitled to include some of such shares in the registration on a pro rata basis (with all other selling stockholders entitled to participate in the registration), unless no shareholders are permitted to sell equity securities under such registration statement. The Company will not grant any registration or similar rights that are superior or prior to those of the Holder, as set forth herein.

(b) Notwithstanding Section 7(a), Company hereby grants to Holder the following additional registration rights:

Company shall file a registration statement under the Act registering the Registrable Securities on or before September 1, 2007 (the "Filing Date") and such registration statement shall be declared effective on or before October 30, 2007 (the "Effectiveness Date"). If: (i) the Registration Statement is not filed on or prior to the Filing Date; (ii) the Registration Statement is not declared effective by the Commission by the Effectiveness Date; (iii) after the Registration Statement is filed with and declared effective by the Commission, the Registration Statement ceases to be effective (by suspension or otherwise) as to all Registrable Securities to which it is required to relate at any time prior to the expiration of the Effectiveness Period (without being succeeded immediately by an additional registration statement filed and declared effective) for a period of time which shall exceed 30 days in the aggregate per year or more than 20 consecutive calendar days (defined as a period of 365 days commencing on the date the Registration Statement is declared effective); or (iv) the Common Stock is not listed or quoted, or is suspended from trading on any Trading Market for a period of five (5) consecutive Trading Days (provided the Company shall not have been able to cure such trading suspension within 30 days of the notice thereof or list the Common Stock on another Trading Market); (any such failure or breach being referred to as an "Event," and for purposes of clause (i) or (ii) the date on which such Event occurs, or for purposes of clause (iii) the date which such 30 day or 20 consecutive day period (as the case may be) is exceeded, or for purposes of clause (iv) the date on which such five (5) Trading Day period is exceeded, being referred to as "Event Date"), then until the applicable Event is cured, the Company shall pay to Holder an amount in cash, as liquidated damages and not as a penalty, equal to $15,000 for each thirty (30) day period (prorated for partial periods) on a daily basis. While such Event continues, such liquidated damages shall be paid not less often than each thirty (30) days. Any unpaid liquidated damages as of the date when an Event has been cured by the Company shall be paid within three (3) days following the date on which such Event has been cured by the Company. The liquidated damages paid shall be prorated among the Holders based on the percentage that the number of Registrable Securities held by them on the Event Date bears to the total amount of Registrable Securities originally issuable under the Note and Warrant (adjusted for stock splits, dividends, recombinations of shares and similar events occurring after the date hereof) . The provisions of this Section shall be the sole and exclusive remedy for any breach or failure of this Amendment based upon an Event, other than specific performance.

(c) Notwithstanding anything to the contrary herein, to the extent Holder has or receives any common stock of Borrower that is subject to Rule 144 of the Securities Act of 1933, the Borrower shall provide Holder the registration rights set forth in this Section 8.

4

(d) Notwithstanding anything to the contrary herein, in the event the Registrable Securities are not registered on or before October 30, 2007, the Warrant Shares shall automatically and without further notice to Borrower, become exercisable via cashless exercise. Pursuant hereto, the Holder may elect to exchange all or some of this Warrant for shares of Common Stock equal to the value of the amount of this Warrant being exchanged on the date of exchange. If the Holder elects to exchange this Warrant as provided in this Section, the Holder shall tender to the Borrower this Warrant for the amount being exchanged, along with written notice of the Holder's election to exchange some or all of this Warrant, and the Borrower shall issue to the Holder the number of shares of Common Stock computed using the following formula:

$$X = \frac{Y(A-B)}{A}$$

Where:   $X =$   The number shares of Common Stock to be issued to the Holder.

$Y =$   The number shares of Common Stock purchasable under the amount of this Warrant being exchanged (as adjusted to the date of such calculation).

$A =$   The Market Price of one share of Common Stock.

$B =$   The Purchase Price (as adjusted to the date of such calculation).

The Warrant exchange shall take place on the date specified in the notice or if the date the notice is received by the Borrower is later than the date specified in the notice, on the date the notice is received by the Borrower.

As used herein in the phrase *"Market Price"* at any date shall be deemed to be the last reported sale price or the closing price of the Common Stock on any exchange (including the National Association of Securities Dealers Automated Quotation System (*"Nasdaq"*)) on which the Common Stock is listed or the closing price as quoted on the OTC Bulletin Board, or, in the case no such reported sale takes place on such day, the average of the last reported sales prices or quotations for the last five trading days, in either case as officially reported or quoted by the principal securities exchange or the OTC Bulletin Board, and if the Common Stock is not listed or quoted as determined in good faith by resolution of the Board of Directors of the Borrower, based on the best information available to it.

### 9.   Representations.

(a) Borrower represents and warrants to the Holder that (i) the execution, delivery and performance of this Amendment, including with respect to the exchange of the principal amount hereof for Conversion Stock, has been duly authorized by all necessary proceedings, and does not violate any provision of the Borrower's organizational documents or any law, regulation, agreement, order or understanding binding on the Borrower, (ii) this Amendment, including with respect to the exchange of the principal amount hereof for Conversion Stock, is Borrower's legal, binding and valid agreement and obligation, and is

5

enforceable against the Borrower in accordance with its terms; (iii) Borrower has adequate shares in reserve in it capital stock to permit the issuance of all shares of Conversion Stock issuable hereunder; and (iv) upon issuance as provided herein, the shares of Conversion Stock issuable upon exchange hereof shall be duly authorized, validly issued, fully paid and non-assessable, free from preemptive rights or other restrictions whatsoever.

       10.   **Event of Default.** Section 4 of the Note shall be supplemented with the following provisions:

       (a) If an Event of Default or any default arising under this Amendment occurs, the Note shall bear interest at 18% per annum. A default under this Amendment shall be deemed to be an Event of Default. Without affecting the Holder's rights to demand payment of the Note and at time with or without cause or reason, and in addition to that right, upon an Event of Default, Holder may, at its option and without notice (such notice being expressly waived), declare the Note immediately due and payable in full and at once; and Holder may pursue all rights and remedies available under the Note, or under applicable law. Holder's rights, remedies and powers, as provided in the Note and any other documents or agreements among the parties are cumulative and concurrent, and may be pursued singly, successively or together against maker, any guarantor, the security described in the collateral documents, and any other security given at any time to secure the payment hereof, all at the sole discretion of Holder. Additionally, Holder may resort to every other right or remedy available at law or in equity without first exhausting the rights and remedies contained herein, all in Holder's sole discretion. Failure of Holder, for any period of time or on more than one occasion, to exercise its option to demand payment hereunder shall not constitute a waiver of the right to demand payment at any time during the continued existence of any Event of Default or any subsequent Event of Default. No declaration of default or other event relating to enforcement of the Note or otherwise shall constitute a waiver of the Holder's rights to exchange the Note for Conversion Stock.

       (b)    If any attorney is engaged: (i) to collect any sums due under the Note, whether or not legal proceedings are thereafter instituted by Holder; (ii) to represent Holder in any bankruptcy, reorganization, receivership or other proceedings affecting creditors' rights and involving a claim under the Note; (iii) to protect the liens and security interests of Holder (iv) to foreclose on the collateral encumbered by the Note, if any; (v) to represent Holder in any other proceedings whatsoever in connection with the loan evidenced hereby, or (vi) in connection with seeking an out-of-court workout or settlement of any of the foregoing, then Borrower shall pay to Holder all reasonable costs, attorneys' fees and expenses in connection therewith, in addition to all other amounts due hereunder.

       11.   **Miscellaneous.**

       (a)    <u>Reference to the Note.</u>

       (i)    Except as modified, amended, updated and supplemented by the terms of this Amendment, the Note shall remain in full force and effect in accordance with its respective terms and is hereby ratified and confirmed. In the event of any inconsistency

6

between the provisions of the Note and this Amendment, the terms of this Amendment shall control.

(b)     Counterparts. This Amendment may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

(c)     Severability. The invalidity, illegality or unenforceability of any provision or provisions of this Amendment will not affect any other provision of this Amendment, which will remain in full force and effect, nor will the invalidity, illegality or unenforceability of a portion of any provision of this Amendment affect the balance of such provision. In the event that any one or more of the provisions contained in this Amendment or any portion thereof shall for any reason be held to be invalid, illegal or unenforceable in any respect, this Amendment shall be reformed, construed and enforced as if such invalid, illegal or unenforceable provision had never been contained herein.

(d)     Binding Nature. This Agreement will be binding upon and will inure to the benefit of any successor or successors of the parties hereto.

(e)     Entire Agreement. This Amendment constitutes the entire agreement between the parties hereto with respect to the subject matter hereof. It supersedes all prior negotiations, letters and understandings relating to the subject matter hereof.

(f)     Amendment. This Amendment may not be amended, supplemented or modified in whole or in part except by an instrument in writing signed by the party or parties against whom enforcement of any such amendment, supplement or modification is sought.

(g)     BORROWER AND HOLDER BY ITS ACCEPTANCE OF THIS NOTE, HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS NOTE AND THE BUSINESS RELATIONSHIP THAT IS BEING ESTABLISHED. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY MAKER AND BY HOLDER, AND BORROWER ACKNOWLEDGES THAT NEITHER HOLDER NOR ANY PERSON ACTING ON BEHALF OF HOLDER HAS MADE ANY REPRESENTATIONS OF FACT TO INCLUDE THIS WAIVER OF TRIAL BY JURY OR HAS TAKEN ANY ACTIONS WHICH IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. BORROWER AND HOLDER ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT BORROWER AND HOLDER HAVE ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS NOTE AND THAT EACH OF THEM WILL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS.

[Remainder of Page Intentionally Left Blank]

7

IN WITNESS WHEREOF, the parties hereto have duly executed this Amendment as of the date first written above.

**PRIDE BUSINESS DEVELOPMENT HOLDINGS, INC.**, a Nevada corporation

By: _____
Name:  Michael M. Markow
Title:    Chief Executive Officer


**VESTAL VENTURE CAPITAL**, a New York partnership

By: _____
Name: Allan R. Lyons
Title:  Managing Partner

8

# EXHIBIT C

## GUARANTY

This Guaranty ("Guaranty") is made and executed this __ day of November, 2006, by Michael M. Markow, whose address is set forth on the signature page hereto, in his individual capacity ("Guarantor"), in favor of Vestal Venture Capital, a New York general partnership ("Secured Party"), having a place of business at 92 Hawley Street, Binghamton, New York 13902.

1.    Defined Terms. Capitalized terms used but not otherwise defined herein shall be given the meanings ascribed to such terms in the Stock Pledge Agreement, of even date herewith (the "Pledge Agreement"), between the Secured Party and Pride Business Development Holdings, Inc., a Nevada corporation ("Debtor"), attached hereto as Annex A.

2.    Obligations Guaranteed. The Guarantor undertakes and agrees as follows:

In order to induce Secured Party to extend the maturity date of the Subordinated 12% Promissory Note in the principal amount of Three Hundred Thousand Dollars (US $300,000) a copy of which is attached hereto as Annex B (the "12% Note"), executed by Debtor in favor of Secured Party, and for other good and valuable consideration, the Guarantor, intending to be legally bound, hereby absolutely and unconditionally guarantees and becomes surety for the payment and performance when due (at maturity, upon acceleration, or otherwise) of all of the obligations of Debtor under (i) the 12% Note and (ii) the 10% Promissory Note in the principal amount of Fifty Thousand Dollars (US $50,000) a copy of which is attached hereto as Annex C ( the "10% Note" together with the 12% Note, referred to as the "Notes"); and (iii) the Pledge Agreement (items (i) through (iii) together with this Guaranty, the "Loan Documents"), of every kind or nature, whether joint or several, due or to become due, absolute or contingent, now existing or hereafter arising, and whether principal, interest, fees, costs, expenses or otherwise (including without limitation any interest and/or expenses accruing following the commencement of any insolvency, receivership, reorganization or bankruptcy case or proceeding relating to Debtor, whether or not a claim for post-petition interest and/or expenses is allowed in such case or proceeding). The Guarantor shall also pay or reimburse Secured Party on demand for all costs and expenses, including without limitation attorneys' fees, incurred by Secured Party at any time to enforce, protect, preserve, or defend Secured Party's rights hereunder and with respect to any property secured in connection with the Loan Documents. All payments hereunder shall be made in lawful money of the United States, in immediately available funds.   All obligations of the Debtor and the Guarantor under the Loan Documents shall be collectively referred to as the "Obligations."

3.    Representations and Warranties. The Guarantor represents and warrants that:

(a)    The Guarantor' execution and performance of this Guaranty shall not (i) violate or result in a default or breach (immediately or with the passage of time) under any contract, guaranty or instrument to which the Guarantor is a party, or by which the Guarantor is

1

bound, (ii) violate or result in a default or breach under any order, decree, award, injunction, judgment, law, regulation or rule, or (iii) cause or result in the imposition or creation of any lien upon any property of the Guarantor.

(b)     No consent, license or approval of, or filing or registration with, any governmental authority is necessary for the execution and performance hereof by the Guarantor.

(c)     This Guaranty constitutes the valid and binding obligation of the Guarantor enforceable in accordance with its terms.

4.    Guarantor Acknowledgements.

(a)     The Guarantor hereby waives notice of (i) acceptance of this Guaranty, (ii) the existence or incurring from time to time of the Obligations guaranteed hereunder, (iii) nonpayment, the existence of any event of default, the making of demand, or the taking of any action by Secured Party, under the Loan Documents, and (iv) default and demand hereunder.

(b)     The Guarantor further acknowledges that the Guarantor (i) has examined or had the opportunity to examine the Loan Documents and (ii) waives any defense which may exist resulting from the Guarantor's failure to receive or examine at any time the Loan Documents or any amendments, supplements, restatements or replacements therefor.

5.    Secured Party Actions. The Guarantor hereby consents and agrees that Secured Party may at any time or from time to time in Secured Party's discretion (a) extend or change the time of payment and/or change the manner, place or terms of payment of any or all Obligations, (b) amend, supplement, restate or replace the Loan Documents (excluding the Guaranty), (c) renew or extend any financing now or hereafter reflected by the Loan Documents or the maturity thereof or increase (without limit of any kind and whether related or unrelated) or decrease loans and extensions of credit to Debtor, (d) modify the terms and conditions under which loans and extensions of credit may be made to Debtor, (e) settle, compromise or grant releases for liabilities of Debtor, and/or any other person or persons liable with Guarantor for, any Obligations, (f) exchange, compromise, release or surrender, or subordinate or release any lien on, any property (including any collections therefrom or proceeds thereof) of Debtor or any other person or persons now or hereafter securing any of the Obligations, and (g) apply any and all payments and proceeds of any property of any person securing any or all of the Obligations received by Secured Party at any time against the Obligations in any order as Secured Party may determine; all of the foregoing in such manner and upon such terms as Secured Party may see fit, and without notice to or further consent from the Guarantor, who hereby agrees to be and shall remain bound upon this Guaranty notwithstanding any such action on Secured Party's part.

6.    Scope of Guaranty. The Guaranty is a Guaranty of suretyship and a guaranty of payment and not of collection. The liability of the Guarantor hereunder is absolute, primary, unlimited and unconditional and shall not be reduced, impaired or affected in any way by reason of (a) any failure to obtain, retain or preserve, or the lack of prior enforcement of, any rights

2

against any person or persons liable for the Obligations (including Debtor and the Guarantor) or in any property, (b) the invalidity, unenforceability or voidability of any Obligations or any liens or rights in any property pledged by any person or persons, (c) any delay in making demand upon Debtor or any delay in enforcing, or any failure to enforce, any rights against Debtor or any other person or persons liable for any or all of the Obligations or in any property pledged by any person or persons, even if such rights are thereby lost, (d) any failure, neglect or omission on Secured Party's part to obtain, perfect or continue any lien upon, protect, exercise rights against, or realize on, any property of Debtor, the Guarantor or any other party securing the Obligations, (e) the existence or nonexistence of any defenses which may be available to the Debtor with respect to the Obligations, (f) the granting of any waiver or forbearance at any time and for any period with respect to any performance by Debtor or any event(s) of default under the Loan Documents, (g) the commencement of any bankruptcy, reorganization, liquidation, dissolution or receivership proceeding or case filed by or against Debtor or any Guarantor or (h) any other fact, event, condition or omission which may give rise to a suretyship defense. Guarantor promises and undertakes to make all payments hereunder free and clear of any deduction, offset, defense, claim or counterclaim of any kind.

7.    Reinstatement.  If any or all payments or proceeds of property securing any or all of the Obligations made from time to time to Secured Party with respect to any obligation hereby guaranteed are at any time recovered from, or repaid by, Secured Party in whole or in part in any bankruptcy, reorganization, receivership, insolvency or similar case or proceeding instituted by or against Debtor, this Guaranty shall continue to be fully applicable to (or, as the case may be, reinstated to be applicable to) such obligation to the same extent as if the recovered or repaid payment(s) or proceeds had never been originally paid to Secured Party.

8.    Cumulative Remedies.  All rights and remedies under the Loan Documents, are cumulative and not alternative, and Secured Party may proceed in any order from time to time against Debtor, the Guarantor and/or any other person or persons liable for any or all of the Obligations and their respective assets.  Secured Party shall not have any obligation to proceed at any time or in any manner against, or exhaust any or all of Secured Party's rights against, Debtor or any other person or persons liable for any or all of the Obligations prior to proceeding against the Guarantor hereunder.

9.    Subrogation.  Any and all rights of any nature of the Guarantor to subrogation, reimbursement or indemnity and any right of the Guarantor to recourse to any assets or property of, or payment from, Debtor or any other person or persons liable for any or all of the Obligations as a result of any payments made or to be made hereunder for any reason shall be unconditionally subordinated to all of Secured Party's rights under the Loan Documents and the Guarantor shall not at any time exercise any of such rights unless and until all of the Obligations have been unconditionally paid in full.  Any payments received by the Guarantor in violation of this Section shall be held in trust for and immediately remitted to Secured Party.

10    Secured Party Records.  Secured Party's books and records of any and all of the Obligations, absent manifest error, shall be prima facie evidence against the Guarantor of the

3

indebtedness owing or to become owing to Secured Party hereunder.

11.    Continuing Surety. This Guaranty shall constitute a continuing surety obligation with respect to all Obligations from time to time incurred or arising and shall continue in effect until all Obligations are indefeasibly paid and satisfied and the liability of the Guarantor under this Guaranty may not be revoked or terminated.

12.    Setoff. The Guarantor agrees that Secured Party shall have a right of setoff against any and all property of the Guarantor now or at any time in Secured Party's possession, including without limitation deposit accounts, and the proceeds thereof, as security for the obligations of the Guarantor hereunder.

13.    Acceleration. If an event of default occurs and is continuing under the Loan Documents, then all of the Guarantor' liabilities of every kind or nature to Secured Party or other third party hereunder shall, at Secured Party's option, become immediately due and payable and Secured Party may at any time and from time to time, at Secured Party's option (regardless of whether the liability of Debtor or any other person or persons liable for any or all of the Obligations has matured or may then be enforced), take any and/or all actions and enforce all rights and remedies available hereunder or under applicable law to collect the Guarantor's liabilities hereunder.

14.    Enforcement Timing. Failure or delay in exercising any right or remedy against the Guarantor hereunder shall not be deemed a waiver thereof or preclude the exercise of any other right or remedy hereunder. No waiver of any breach of any provision of this Guaranty shall be construed as a waiver of any subsequent breach or of any other provision.

15.    Confession. **THE GUARANTOR HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY(S) OR THE NOTARY OR CLERK OF ANY COURT OF RECORD IN THE STATE OF FLORIDA, OR ELSEWHERE, FOLLOWING THE OCCURRENCE OF AN EVENT OF DEFAULT UNDER THE LOAN DOCUMENTS, TO APPEAR FOR THE GUARANTOR IN ANY SUCH COURT, WITH OR WITHOUT DECLARATION FILED, AS OF ANY TERM OR TIME, AND CONFESS OR ENTER JUDGMENT AGAINST THE GUARANTOR IN SECURED PARTY'S FAVOR FOR ALL OBLIGATIONS DUE OR TO BECOME DUE BY THE GUARANTOR HEREUNDER, WITH COSTS OF SUIT, RELEASE OF ERRORS AND REASONABLE ATTORNEYS' FEES; AND FOR THE PURPOSE HEREOF A COPY OF THIS GUARANTY SHALL BE SUFFICIENT WARRANT. SUCH AUTHORITY AND POWER SHALL NOT BE EXHAUSTED BY ANY EXERCISE THEREOF AND JUDGMENT MAY BE CONFESSED FROM TIME TO TIME HEREUNDER AS SECURED PARTY MAY DETERMINE.**

**THE GUARANTOR, BEING FULLY AWARE OF THE RIGHT TO NOTICE AND A HEARING CONCERNING THE VALIDITY OF ANY AND ALL CLAIMS THAT MAY BE ASSERTED AGAINST THE GUARANTOR BY SECURED PARTY BEFORE A**

4

123052.00102/50331032v.2

JUDGMENT CAN BE ENTERED HEREUNDER OR BEFORE EXECUTION MAY BE LEVIED ON SUCH JUDGMENT AGAINST ANY AND ALL PROPERTY OF THE GUARANTOR, HEREBY KNOWINGLY, VOLUNTARILY AND UNCONDITIONALLY WAIVES THESE RIGHTS AND AGREES AND CONSENTS TO JUDGMENT BEING ENTERED BY CONFESSION IN ACCORDANCE WITH THE TERMS HEREOF AND EXECUTION BEING LEVIED ON SUCH JUDGMENT AGAINST ANY AND ALL PROPERTY OF THE GUARANTOR, IN EACH CASE WITHOUT FIRST GIVING NOTICE AND THE OPPORTUNITY TO BE HEARD ON THE VALIDITY OF THE CLAIM OR CLAIMS UPON WHICH SUCH JUDGMENT IS ENTERED.

16.    Maximum Liability.  To the extent that applicable law otherwise would render the obligations of the Guarantor hereunder invalid or unenforceable, the Guarantor shall nevertheless remain liable hereunder, provided however that the Guarantor' obligations shall be limited to the maximum amount which does not result in such invalidity or unenforceability.  Notwithstanding the foregoing, the Guarantor' obligations hereunder shall be presumptively valid and enforceable to their fullest extent in accordance with the terms of this Guaranty, as if this Section were not a part of this Guaranty.

17.    Notices.  All notices, requests, demands, consents, waivers, and other communications required or permitted under this Guaranty must be in writing and shall be deemed to have been given (i) upon delivery to the appropriate addresses, if delivered personally, or (ii) three (3) business days after the date mailed to the appropriate addresses, if mailed by first class certified mail, registered mail, or express mail, in each case with postage prepaid and return receipt requested, or (iii) two (2) days after the date sent to the appropriate addresses, if sent by a nationally recognized overnight delivery or courier service, with delivery charges prepaid and proof of delivery or receipt requested, or (iv) on the date sent to the appropriate addresses or fax numbers, or sent by prepaid telegram, e-mail, or fax, provided that a copy is sent within 24 hours thereafter by one of the other methods of giving notices permitted under this Section. The addresses, e-mail addresses, and fax numbers of the Guarantor for purposes of this Section are set forth on the signature page of this Guaranty.

18.    Successors and Assigns.  This Guaranty shall (a) be legally binding upon the Guarantor, and the Guarantor's successors and assigns, provided that the Guarantor's obligations hereunder may not be delegated or assigned without Secured Party's prior written consent and (b) benefit any and all of Secured Party's successors and assigns.

19    Entire Agreement.    This Guaranty embodies the whole agreement and understanding of the Guarantor hereto relative to the subject matter hereof.  No modification or waiver of any provision hereof shall be enforceable unless approved by Secured Party in writing.

20.    Governing Law, Submission to Jurisdiction and Jury Trial.  THIS GUARANTY SHALL IN ALL RESPECTS BE INTERPRETED, CONSTRUED AND GOVERNED BY THE SUBSTANTIVE LAWS OF THE STATE OF FLORIDA.    THE GUARANTOR IRREVOCABLY KNOWINGLY AND VOLUNTARILY (I) SUBMITS TO THE

5

NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF FLORIDA AND THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA EACH LOCATED IN PALM BEACH COUNTY, FLORIDA FOR THE PURPOSES OF ANY LITIGATION OR PROCEEDING HEREUNDER OR CONCERNING THE TERMS HEREOF AND (II) WAIVES THE RIGHT TO A JURY TRIAL WITH RESPECT TO ANY LITIGATION, CLAIMS OR PROCEEDING HEREUNDER OR CONCERNING THE TERMS HEREOF OR OTHERWISE IN CONNECTION WITH THE GUARANTORS'S DEALINGS WITH LENDER.

21.     Severability. The invalidity or unenforceability of any provision hereof shall not affect the remaining provisions which shall remain in full force and effect.

*[signature on following page]*

6

123052.00102/50331032v.2

IN WITNESS WHEREOF, this Guaranty has been duly executed and delivered as of the day and year first above written.

**GUARANTOR**

*M. Markow / at*

Michael M. Markow

Address for Notices:
1230 Calle Siesta
Camarillo, CA  93012
E-mail address:

Fax:
805 322 6515
Attention:

1161342.00612322

123052.00102/50331032v.1

# EXHIBIT D

NEITHER THIS PROMISSORY NOTE NOR ANY OF THE SECURITIES ISSUABLE HEREUNDER HAS BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), AND MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED IN THE ABSENCE OF A REGISTRATION STATEMENT IN EFFECT WITH RESPECT TO THE SECURITIES, OR DELIVERY TO THE COMPANY OF AN OPINION OF COUNSEL IN FORM AND SUBSTANCE SATISFACTORY TO THE COMPANY THAT SUCH OFFER, SALE OR TRANSFER, PLEDGE OR HYPOTHECATION IS IN COMPLIANCE WITH THE ACT OR UNLESS SOLD IN FULL COMPLIANCE WITH RULE 144 UNDER THE ACT.

## 10% PROMISSORY NOTE

US$50,000

November 18, 2005
Encino, California

PRIDE BUSINESS DEVELOPMENT HOLDINGS, INC., a Nevada corporation (the "Company"), for value received, hereby promises to pay to Vestal Venture Capital (the "Holder"), the principal amount of Fifty Thousand Dollars (US$50,000) (the "Principal Amount"), together with interest on the unpaid amount thereof in accordance with the terms hereof, from the date hereof until paid or converted in accordance with the terms hereof.

1.    Promissory Note (the "Note")

1.1.    Interest Rate. Subject to the provisions of Subsection 2.1 hereof, the rate of interest hereunder (the "Interest Rate") shall be ten percent (10%) per annum, which shall be computed on the basis of a three hundred sixty-five (365) day year for the actual number of days elapsed and shall be payable in arrears and in cash.

1.2    Payments. The Principal Amount plus all accrued but unpaid interest thereon shall be due and payable upon the first to occur of the following events (the "Due Date"): (i) Twenty-six (26) calendar days from the issue date of this Note; or (ii) December 12, 2005. Payment and any prepayment under Section 1.3 below shall be made at the offices or residence of the Holder, or at such other place as the Holder shall have designated to the Company in writing, in lawful money of the United States of America.

1.3    Prepayment. Prepayment may be made by the Company of the entire amount of the Principal Amount and all accrued but unpaid interest without penalty at any time.

1

2.     Shares and Warrants

    2.1 Issuance of Shares: The Company will issue seven thousand (7,000) shares of unregistered Company common stock, US$.001 par value (the "Shares") to Holder for each ten thousand dollars (US$10,000) of Notes purchased and in exchange for one hundred dollars (US$100) of the interest expense set forth in Subsection 1.1 hereof being converted to purchase the Shares. As promptly as practicable, the Company at its expense will issue and deliver to the Holder of this Note a certificate or certificates evidencing the number of full shares of Common Stock issuable to Holder in accordance with the terms and conditions of this Note. No fractional shares shall be issued. In lieu of any fractional share to which such Holder would otherwise be entitled, such fractional share shall be rounded to the nearest whole share

    2.2 Issuance of Warrants. The Company will issue all of the following to investors for each $10,000 of Notes purchased: (i) warrants to purchase 3,500 additional Shares at $1.00 per Share for every $10,000 of Notes subscribed; and (ii) warrants to purchase 3,500 additional Shares at $1.25 per Share for every $10,000 of Notes subscribed. The term of the warrants will be 3 years from the date of issue.

    2.3 Registration Rights. The Company will file a registration statement within 9 months of issuance of the Note and include all the underlying shares of common stock issued for the Note in accordance with Section 2.1 hereinabove and any exercise of the warrants referenced in Section 2.2 hereinabove. The Holder will have piggy-back registration rights if the Company files registration for any other Shares before this 9 month period. Piggy-back registration will be with the acceptance of the underwriters as selected by the Company.

    3.     Personal Guarantee. The prompt payment of the Principal Amount, including any and all interest due thereon, is personally guaranteed as set forth in Attachment "A" to this Note.

    4.     Events of Default. The Holder may declare the entire amount of the Principal Amount of this Note and all accrued but unpaid interest thereon immediately due and payable, effective upon written notice to the Company as described above, if any of the following events shall occur (each, an "Event of Default"):

    4.1     Payment of Note. Default in the payment of this Note when due.

    4.2     Bankruptcy, Insolvency, Etc. Commenced by the Company. If the Company:

    4.2.1   shall commence any proceeding or any other action relating to it in bankruptcy or seek reorganization, arrangement, readjustment of its debts, dissolution, liquidation, winding-up, composition or any other relief under the United States Bankruptcy Act, as amended, or under any other insolvency, reorganization, liquidation, dissolution, arrangement,

2

composition, readjustment of debt or any other similar act or law, of any jurisdiction, domestic or foreign, now or hereafter existing;

       4.2.2   shall admit its inability to pay its debts as they mature in any petition or pleading in connection with any such proceeding;

       4.2.3   shall apply for, or consent to or acquiesce in, an appointment of a receiver, conservator, trustee or similar officer for it or for all or substantially all of its assets and properties;

       4.2.4   shall make a general assignment for the benefit of creditors; or

       4.2.5   shall admit in writing its inability to pay its debts as they mature.

       4.3     Bankruptcy, Insolvency, Etc. Commenced Against the Company. If any proceedings are commenced or any other action is taken against the Company in bankruptcy or seeking reorganization, arrangement, readjustment of its debts, dissolution, liquidation, winding-up, composition or any other relief under the United States Bankruptcy Act, as amended, or under any other insolvency, reorganization, liquidation, dissolution, arrangement, composition, readjustment of debt or any other similar act or law, of any jurisdiction, domestic or foreign, now or hereafter existing; or a receiver, conservator, trustee or similar officer for the Company or for all or substantially all of its assets and properties is appointed; and in each such case, such event continues for ninety (90) days undismissed, unbonded and undischarged.

       4.4     Material Breach. Any material breach of any representation, warranty, covenant or obligation of the Company under this Note that is not cured within thirty (30) days after receipt by the Company of written notice from the Holder.

       5.     Miscellaneous.

       5.1     Transfer of Note. This Note shall not be transferable or assignable in any manner and no interest shall be pledged or otherwise encumbered by the Holder without the express written consent of the Company, and any such attempted disposition of this Note or any portion hereof shall be void ab initio and of no force or effect.

       5.2     Titles and Subtitles. The titles and subtitles used in this Note are for convenience only and are not to be considered in construing or interpreting this Note.

       5.3     Notices. Any notice, demand, or other communication which any party hereto may elect or be required to give hereunder shall be given by fax or overnight courier, and shall be deemed to have been received, in the case of a fax, on the date such fax was sent if confirmation of transmission is received by the sender, and in the case of overnight courier, on

11/21/05   09:18 FAX 818 206 0053                                                    @026

the next business day. All notices shall be sent to the parties at the addresses provided on the signature page set forth below.

    5.4    <u>Attorney's Fees</u>. If any action at law or in equity is necessary to enforce or interpret the terms of this Note, the prevailing party shall be entitled to reasonable attorney's fees, costs and disbursements in addition to any other relief to which such party may be entitled.

    5.5    <u>Amendments and Waivers</u>. Any amendment or waiver of the terms, conditions, right and obligations set forth herein shall be binding only with the written consent of the Company and the Holder.

    5.6    <u>Severability</u>. If one or more provisions of this Note are held to be unenforceable under applicable law, such provision shall be excluded from this Note and the balance of the Note shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms.

    5.7    <u>Governing Law</u>. This Note shall be governed by and construed and enforced in accordance with the laws of the State of California, without give effect to its conflicts of laws principles.

    5.8    <u>Counterparts</u>. This Note may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.


                            [SIGNATURE PAGES FOLLOW]


                                        4

11/21/05    09:17 FAX 818 206 0053                                    ⓐ028

## ATTACHMENT "A" TO NOTE

### PERSONAL GUARANTEE OF PAYMENT OF NOTE

The undersigned personally guarantees prompt payment of the Principal Amount, including any and all interest due thereon, set forth in the attached 10% Promissory Note (the "Note") issued by Pride Business Development Holdings, Inc., a Nevada corporation (the "Company"), when due in accordance with its terms. Said personal guarantee of the Note is backed by the personal funds of the undersigned. If immediately available funds are not received by the Holder of the Note by the Due Date set forth in the Note, then the undersigned will personally pay to the Holder, within two days following the Due Date set forth in the Note, the Principal Amount of the Note, including any and all interest due thereon.

Michael M. Markow
15760 Ventura Blvd., Suite 1020
Encino, California 91436
Telephone : 818-783-0058
Facsimile: 818-783-1120

*Note $50,000 VESTAL*

6

# EXHIBIT E

## AMENDMENT TO 10% PROMISSORY NOTE

This Amendment to the 10% Promissory Note, dated November 18, 2005 (this "Amendment") is entered into as of April __, 2007, by and between VESTAL VENTURE CAPITAL, a New York partnership ("Holder") and PRIDE BUSINESS DEVELOPMENT HOLDINGS, INC., a Nevada corporation ("Borrower"), with respect to the following:

A.     Holder and Borrower have entered into that certain Promissory Note dated as of November 18, 2005, in the principal amount of $50,000 (as amended, restated, modified and supplemented from time to time, the "Note"). Capitalized terms used but not defined in this Amendment shall have the meanings given them in the Note.

B.     Borrower acknowledges that Events of Default have occurred and are continuing under the Note.

C.     Borrower has requested and been granted past extensions of the Note and has further requested a reduction in the interest rate charged under the Note, and Holder has agreed to amend the Note and waive existing Events of Default on the terms and conditions set forth herein.

D.     Holder and Borrower intend that this Amendment not be a restatement or replacement for the Note but rather a modification, amendment, update and supplement to the Note which will remain in full force and effect except for the provisions modified by this Amendment.

NOW, THEREFORE, in consideration of the foregoing and the terms and conditions hereof, the parties hereto agree as follows:

1.     **Payments.**

(a) All Interest accrued through March 31, 2007 but unpaid on the Note shall be paid in full no later than April 8, 2007.

(b) If the Interest Payment set forth in subparagraph (a) is not made on or before April 8, 2007 or if there is any default under any provisions of the Note or this Amendment, the Interest Rate specified in Section 1.1 shall be increased to 18% per annum computed on a basis of 365 days per year (the "Default Rate").

2.     **Extension of Maturity Date.** Section 1.2 of the Note is amended to have the due date be May 15, 2007 (the "Due Date")."

3.     **Waiver of Defaults.** Holder hereby waives any and all Events of Default through the date hereof. The waiver granted in this Amendment is a one-time waiver only, is a waiver only of the past Defaults, shall be limited strictly as written and shall not be deemed to constitute a waiver of any Defaults, except as expressly set forth herein.

4.     **Amendment and Waiver Fee.** In consideration for the accommodations granted by Holder herein, if Borrower fails to pay the Note in full by the Due Date, then Borrower hereby agrees to pay to Holder a nonrefundable Amendment and Waiver Fee equal to the value of 50,000 shares of Common Stock of the Borrower (the "Amendment Fee"). In such event, the Amendment Fee shall be paid within three days of the Due Date.

5.     **Representations.**

(a) Borrower represents and warrants to the Holder that (i) the execution, delivery and performance of this Amendment has been duly authorized by all necessary proceedings, and does not violate any provision of the Borrower's organizational documents or any law, regulation, agreement, order or understanding binding on the Borrower, (ii) this Amendment is Borrower's legal, binding and valid agreement and obligation, and is enforceable against the Borrower in accordance with its terms; (iii) Borrower has adequate shares in reserve in it capital stock to permit the issuance of all shares of the Amendment Fee issuable hereunder; and (iv) upon issuance as provided herein, the shares of the Amendment Fee issuable upon exchange hereof shall be duly authorized, validly issued, fully paid and non-assessable, free from preemptive rights or other restrictions whatsoever.

6.  **Event of Default.** Section 4 of the Note shall be supplemented with the following provisions:

(a) If an Event of Default or any default arising under this Amendment occurs, the Note shall bear interest at 18% per annum. A default under this Amendment shall be deemed to be an Event of Default. Without affecting the Holder's rights to demand payment of the Note and at time with or without cause or reason, and in addition to that right, upon an Event of Default, Holder may, at its option and without notice (such notice being expressly waived), declare the Note immediately due and payable in full and at once; and Holder may pursue all rights and remedies available under the Note, or under applicable law. Holder's rights, remedies and powers, as provided in the Note and any other documents or agreements among the parties are cumulative and concurrent, and may be pursued singly, successively or together against maker, any guarantor, the security described in the collateral documents, and any other security given at any time to secure the payment hereof, all at the sole discretion of Holder. Additionally, Holder may resort to every other right or remedy available at law or in equity without first exhausting the rights and remedies contained herein, all in Holder's sole discretion. Failure of Holder, for any period of time or on more than one occasion, to exercise its option to demand payment hereunder shall not constitute a waiver of the right to demand payment at any time during the continued existence of any Event of Default or any subsequent Event of Default. No declaration of default or other event relating to enforcement of the Note or otherwise shall constitute a waiver of the Holder's rights to exchange the Note for Conversion Stock.

(b) If any attorney is engaged: (i) to collect any sums due under the Note, whether or not legal proceedings are thereafter instituted by Holder; (ii) to represent Holder in any bankruptcy, reorganization, receivership or other proceedings affecting creditors' rights and involving a claim under the Note; (iii) to protect the liens and security interests of Holder (iv) to foreclose on the collateral encumbered by the Note, if any; (v) to represent Holder in any other proceedings whatsoever in connection with the loan evidenced hereby, or (vi) in connection with seeking an out-of-court workout or settlement of any of the foregoing, then Borrower shall pay to Holder all reasonable costs, attorneys' fees and expenses in connection therewith, in addition to all other amounts due hereunder.

7.  **Miscellaneous.**

(a)  Reference to the Note.

(i)      Except as modified, amended, updated and supplemented by the terms of this Amendment, the Note shall remain in full force and effect in accordance with its respective terms and is hereby ratified and confirmed. In the event of any inconsistency between the provisions of the Note and this Amendment, the terms of this Amendment shall control.

(b)      Counterparts. This Amendment may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

(c)      Severability. The invalidity, illegality or unenforceability of any provision or provisions of this Amendment will not affect any other provision of this Amendment, which will remain in full force and effect, nor will the invalidity, illegality or unenforceability of a portion of any provision of this Amendment affect the balance of such provision. In the event that any one or more of the provisions contained in this Amendment or any portion thereof shall for any reason be held to be invalid, illegal or unenforceable in any respect, this Amendment shall be reformed, construed and enforced as if such invalid, illegal or unenforceable provision had never been contained herein.

(d)      Binding Nature. This Agreement will be binding upon and will inure to the benefit of any successor or successors of the parties hereto.

(e)      Entire Agreement. This Amendment constitutes the entire agreement between the parties hereto with respect to the subject matter hereof. It supersedes all prior negotiations, letters and understandings relating to the subject matter hereof.

(f)      Amendment. This Amendment may not be amended, supplemented or modified in whole or in part except by an instrument in writing signed by the party or parties against whom enforcement of any such amendment, supplement or modification is sought.

(g)      BORROWER AND HOLDER BY ITS ACCEPTANCE OF THIS NOTE, HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS NOTE AND THE BUSINESS RELATIONSHIP THAT IS BEING ESTABLISHED. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY MAKER AND BY HOLDER, AND BORROWER ACKNOWLEDGES THAT NEITHER HOLDER NOR ANY PERSON ACTING ON BEHALF OF HOLDER HAS MADE ANY REPRESENTATIONS OF FACT TO INCLUDE THIS WAIVER OF TRIAL BY JURY OR HAS TAKEN ANY ACTIONS WHICH IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. BORROWER AND HOLDER ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT BORROWER AND HOLDER HAVE ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS NOTE AND THAT EACH OF THEM WILL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS.

[Remainder of Page Intentionally Left Blank]

IN WITNESS WHEREOF, the parties hereto have duly executed this Amendment as of the date first written above.

PRIDE BUSINESS DEVELOPMENT
HOLDINGS, INC., a Nevada corporation

By: _____
Name: Michael M. Marlow
Title:   Chief Executive Officer

VESTAL VENTURE CAPITAL, a New York
partnership

By _____
Name: Allan R. Lyons
Title:  Managing Partner

4

# EXHIBIT F

THIS NOTE IS A RENEWAL NOTE, AMENDING, RESTATING CONSOLIDATING INTO ONE INSRUMENT THAT CERTAIN PROMISSORY NOTE DATED APRIL 6, 2007 MADE BY BORROWER IN FAVOR OF LENDER IN THE ORIGINAL PRINCIPAL AMOUNT OF $175,000.00 ("PRIOR NOTE"). THIS NOTE RENEWS THE EXISTING OBLIGATION AS EVIDENCED BY THE PRIOR NOTE.

## AMENDED, RESTATED AND CONSOLIDATED
## RENEWAL PROMISSORY NOTE

$175,000.00                                          New York, New York
                                                 .Dated as of April 10, 2007

FOR VALUE RECEIVED, Pride Business Development Holdings, Inc., a Nevada corporation (the "Borrower") hereby promises to pay to the order of Vestal Venture Capital, a New York partnership ("Lender") (Lender and all other or subsequent holders of this Note being sometimes referred to as the "Holder"), such payments to be made to an address as the Holder may designate in writing, the principal sum of One Hundred Seventy Five Thousand Dollars ($175,000.00) (the "Loan"), together with interest on the unpaid principal amount, until paid in full, at a fixed rate (the "Interest Rate") of 18% per annum until all sums due hereunder are paid in full. Unless the maturity hereof is sooner accelerated based on an Event of Default (as defined below), this Note shall mature and the principal sum due hereunder, together with all accrued and unpaid interest thereon and other sums due hereunder, shall become due and payable in full on the earlier of (i) May 7, 2007 or (ii) one business day following the closing of a funding with Alpha Capital or any of its affiliates, successors or agents (the "Due Date").

The amount of interest to be paid on the daily outstanding balance of principal evidenced hereby shall be based upon a 365-day year for the actual number of days for which interest is payable, but such interest shall never exceed the maximum rate of interest permitted under applicable law.

At Borrower's request, Lender has agreed to loan to Borrower the entire principal amount comprising the Loan less an Origination Fee equal to 6% of the Loan, to assist Borrower with certain working capital needs associated with Borrower's business. Borrower agrees to utilize the Loan proceeds only for working capital needs of the Borrower's business (the "Approved Loan Uses"). Borrower will provide a reasonable accounting to Lender its use of the Loan for the Approved Loan Uses.

As additional consideration hereunder, the Borrower shall provide the Holder with seventy five thousand (75,000) shares of the Borrower's unregistered common stock within three business days from the Holders funding of the Loan. Borrower acknowledges that the aforesaid consideration is not imposed as a charge for the use of money, and the shares provided for hereunder shall in no way be deemed an interest charge.

This Note amends and restates in its entirety, the "Prior Note" described in the introductory legend at the top of this instrument. It is the intention of Borrower and Lender that

123052.00102/50336969v.1

this Note, given as a renewal and replacement of the Prior Note, shall amend and restate the Prior in its entirety, without constituting a novation, cancellation or extinguishment of the Prior Note, and that, the Loan (as amended hereby) shall be paid in accordance with this Note and the Loan Documents.

If any payment of interest or principal is not made when due, Borrower will automatically owe Holder a service charge equal to 5% of any payment of interest or principal not paid on the date when due. Borrower acknowledges that the aforesaid late payment fees are not imposed as a charge for the use of money, but rather are imposed to permit Holder to recoup administrative charges, additional overhead and other costs in dealing with loans not paid on time, and the late payment fees provided for hereunder shall in no way be deemed an interest charge. Holder shall have no obligation to accept any late payments hereunder not accompanied by the service charge(s) specified herein. Notwithstanding anything contained herein, this paragraph is not intended to, and shall not, create any grace or cure period

This Note may be prepaid in full or part at any time without penalty to the Borrower.

In addition to the Loan referenced above, this Note evidences Borrower's obligation to repay with interest any additional monies, if any, advanced or expended from time to time by Lender or any Holder to or for the account of Borrower, as provided in any of the Loan Documents or as additional advances, as may be requested or agreed to by Borrower and Lender in writing, whether or not the principal amount hereof shall thereby exceed the principal amount above stated.

The Loan (as amended), and all interest and principal payments due or becoming due under this Note, are guaranteed by M. Michael Markow ("Guarantor"), pursuant to a Guaranty Agreement dated as of the date hereof (the "Guaranty"), and are secured by 500,000 shares of Borrower pursuant to a Stock Pledge Agreement executed and delivered by Borrower and Guarantor, jointly and severally, also dated as of the date hereof ("Stock Pledge Agreement"). Reference is made to the Stock Pledge Agreement for a description of the Collateral, and the rights and remedies of Lender (or another Holder) in respect thereof. This Note, the Guaranty and the Stock Pledge Agreement, and any UCC financing statements or other documents, instruments and agreements evidencing, guaranteeing or securing the Loan, and all written amendments, replacements or supplements to any of them, are collectively called the "Loan Documents").

Notwithstanding the Due Date, the entire principal balance due under this Note, together with accrued interest, if any, may be accelerated and become due and payable immediately, at the Holder's option, upon the occurrence of any "Event of Default", which is defined as any of the following:

(a)    Failure of the Borrower to make any payment of interest within five (5) days of the date when such interest is due, or failure of Borrower to pay the entire principal and interest hereunder on the Due Date. The Holder has no obligation to provide notice, written or

verbal, to the Borrower notifying the Borrower of its failure to pay nor shall the Holder provide the Borrower with any cure period.

(b)     Breach by Borrower of any covenant of any Loan Documents.

(c)     Filing by the Borrower, or Guarantor, or their affiliate, of a voluntary petition under the United States Bankruptcy Code, or under any other insolvency act or law, state or federal, now or hereafter existing; or any action indicating the Borrower's, Guarantor's consent to, approval of, or acquiescence in, any such petition or proceeding; or Borrower's, Guarantor's consent to the appointment of a receiver or trustee for all or a substantial part of their respective properties; or the making of an assignment to the benefit of the creditors on behalf of Borrower or Guarantor; or the Borrower's or Guarantor's inability or the admission in writing of its or his inability to pay debts as they mature.

(d)     Filing of an involuntary petition against the Borrower or Guarantor, under the United States Bankruptcy Code, or under any other insolvency act or law, state or federal, now or hereafter existing; or the involuntary appointment of a receiver or trustee for all or a substantial part of the Borrower's or Guarantor's property; or the issuance of a warrant of attachment, execution or similar process against any substantial part of such properties, which remains undismissed, unbonded or undischarged ninety (90) days' after issuance.

(e)     Borrower, or all or any substantial part of the Borrower's assets, shall be subjected to any lien with a face amount in excess of $50,000 in favor of the United States Internal Revenue Service; or custody or control of such property shall be assumed by any governmental agency or any court of competent jurisdiction at the instance of any governmental agency, and shall be retained for a period of ninety (90) days.

(f)     The entry of any judgment or judgments against the Borrower or Guarantor in excess of $50,000, individually or in the aggregate, which have not been covered by insurance, paid or bonded within forty-five (45) days after entry.

(g)     A breach by Guarantor under the Guaranty or an attempted repudiation by Guarantor of his obligations under the Guaranty.

(h)     If any representation, warranty or other statement made by Borrower or Guarantor in a Loan Document is knowingly false or intentionally misleading in any material respect as of the date made or reaffirmed, or if Borrower or Guarantor commits fraud, defalcation, material waste or intentional diversion of funds, or interferes with Lender's rights with respect to any Collateral in violation of the terms of the Loan Documents or otherwise acts with the intent to hinder, delay or defraud its creditors or any of them including, without limitation, Lender.

(i)     If any security interest granted by Borrower or Guarantor to Lender in connection with the Loan is or becomes invalid or unenforceable or is not, or ceases to be, a perfected first priority lien or security interest in favor of Lender, and/or if Borrower or Guarantor fails to cause such lien or security interest to become a valid, enforceable, first and

prior lien or security interest in a manner satisfactory to Lender within thirty (30) days after Lender delivers written notice thereof to Borrower and Guarantor.

(j)     If Borrower or Guarantor interferes with or acts in derogation of Lender's rights with respect to corporate governance and voting rights and control of the Pledged Shares (as defined in the Loan Agreement) in violation of the terms of the Loan Documents or otherwise with the intent to hinder, delay or defraud Lender.

(k)     Any default by Borrower in the payment or performance of other material indebtedness or obligations the original principal amount of which exceeds $50,000, where such default accelerates or permits the acceleration (after the giving of notice or passage of time or both) of the maturity of such indebtedness.

(l)     If a material adverse change occurs with respect to Borrower's business, including, without limitation, the loss or revocation of or defaults under contracts that are material to Borrower's business, or Borrower's loss of any registration, approval, license, permit, concession or franchise now held or hereafter acquired by Borrower that is material to its business as a going concern, or the failure to pay any fee or taxes which are necessary for the continued operation of the Borrower's business in the same manner as it is now being conducted.

(m)    If an Event of Default occurs as defined in any other Loan Document.

Notwithstanding anything to the contrary herein or in any Loan Document, any Event of Default shall allow the Holder, with or without notice to: (a) accelerate the maturity of this Note and demand immediate payment of all outstanding principal and accrued interest, and other sums due hereunder, and (b) immediately exercise and pursue any rights, privileges, remedies and powers as provided in any Loan Documents or under law. Holder's rights, privileges, remedies and powers, as provided in this Note and the other Loan Documents are cumulative and concurrent, and may be pursued singly, successively or together against Borrower, Guarantor, any security as described in the Loan Documents, and any other security given at any time to secure the payment hereof, all at the sole discretion of Holder. Additionally, Holder may resort to every other right or remedy available at law or in equity without first exhausting the rights and remedies contained herein, all in Holder's sole discretion. Failure of Holder, for any period of time or on more than one occasion, to exercise its option to accelerate the Due Date shall not constitute a waiver of the right to exercise the same at any time during the continued existence of any Event of Default or any subsequent Event of Default.

The net proceeds derived from any collateral held by Holder as security for this Note and the Loan shall be applied first to the expenses of Holder including but not limited to preparing the collateral for sale, notification and sale expenses related to the sale of the collateral, reasonable attorneys fees, costs of litigation, court filing fees, and other such expenses incident to the foregoing, and second to all accrued interest due on this Note, and then finally to the unpaid principal.

TIME IS OF THE ESSENCE for the performance and observance of each agreement and obligation of the Borrower under this Note and the other Loan Documents.

Except as set forth herein, the Borrower, for itself and any guarantor or endorsers, and their respective heirs, successors, assigns and legal representatives, hereby (i) waives presentment, demand, notice, protest, notice of protest and notice of non-payment and any other notice required to be given under the law in connection with the delivery, acceptance, performance, default or enforcement of this Note or any document or instrument evidencing any guaranty or security for payment of this Note; (ii) consents to any and all delays, extensions, renewals or other modifications of the Note or waivers of any term hereof or release or discharge by the Holder of the Borrower or release, substitution or exchange of any security or guarantee for the payment hereof or the failure to act on the part of the Holder or any indulgence shown by the Holder, from time to time and in one or more instances, (without notice to or further assent from the Borrower) and agrees that no such action, failure to act or failure to exercise any right or remedy, on the part of the Holder shall in any way affect or impair the obligations of the Borrower or be construed as a waiver by the Holder of, or otherwise affect, any of the Holder's rights under this Note or under any document or instrument evidencing any security or guarantee for payment of this Note; and (iii) agrees to pay in case of an Event of Default, on demand, all costs and expenses of collection of this Note and/or the enforcement of the Holder's right with respect to, or the administration, supervision, preservation, protection of, or realization upon, any property securing payment or guarantee of payment hereof, including reasonable attorneys' fees plus costs, all such amounts payable as obligations of the Borrower.

Reasonable attorneys' fees are defined to include, but not be limited to, all attorneys' and paralegals' fees, costs and expenses incurred in all matters of collection and enforcement, construction and interpretation, before, during and after suit, trial, proceedings and appeals, including legal services to protect the liens and security interests of the Loan Documents, to enforce any security interest under the Loan Documents, or in connection with seeking an out-of-court workout or settlement of any of the foregoing, as well as appearances in and connected with any receivership or bankruptcy proceedings or creditors' reorganization or similar proceedings, or post-judgment proceedings to enforce any judgment obtained by Holder

Borrower and Holder intend to comply at all times with applicable usury laws. All agreements between Borrower and Holder, whether now existing or hereafter arising and whether written or oral, are hereby limited so that in no contingency, whether by reason of demand or acceleration of the maturity of the Loan or otherwise, shall the interest contracted for, charged, received, paid or agreed to be paid to Holder exceed the maximum rate of interest allowable under applicable law, or absent a maximum stated allowable rate, then, 18% per annum. Holder may, in determining the maximum rate of interest in effect from time to time, take advantage of any law, rule or regulation in effect from time to time available to Holder that exempts Holder from any limit upon the rate of interest it may charge or grants to Holder the right to charge a higher rate of interest. If from any circumstance whatsoever, interest would otherwise be payable to Lender in excess of highest rate permitted by law, the interest payable to Holder shall be reduced to the highest rate permitted by law; and if from any circumstance Holder shall ever receive anything of value deemed interest by applicable law in excess of the

95026-2                                    5
123052.00102/50336969v.1

maximum rate of interest specified herein, an amount equal to any excessive interest shall be applied to the reduction of the principal of Loan, and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of principal of the Loan such excess shall be refunded to Borrower. Neither Borrower nor any guarantor or endorser shall have any action against Holder for any damages whatsoever arising out of the payment or collection of any excess interest.

Borrower shall pay the cost of all revenue tax, stamp tax, intangibles tax or other tax previously, now or hereafter required by law at any time to be affixed to this Note or to any Loan Documents, or to be paid on the Loan or any indebtedness. Borrower indemnifies Lender and holds Lender harmless from any such taxes and any penalties, late charges or fines as may actually be or become due and payable; such indemnity to survive final payment of the Loan.

All of the terms and provisions of this Note shall be binding upon, inure to the benefit of and be enforceable by each of the parties hereto, and their respective successors, heirs, personal representatives, and permitted assigns.

If any part of this Note is adjudged illegal, invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision of this Note that can be given effect without such provision.

This Note shall be governed by, and construed in accordance with, the laws of the State of New York. This Note may not be varied, amended or modified except in writing signed by the Borrower and the Holder.

TO THE FULLEST EXTENT NOT PROHIBITED BY APPLICABLE LAW THAT CANNOT BE WAIVED, EACH OF THE PARTIES HEREBY WAIVES THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT OR ANY LOAN DOCUMENTS. THE PARTIES ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH HAS RELIED ON THE WAIVER IN ENTERING INTO THIS AGREEMENT AND THAT EACH WILL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS. THE PARTIES WARRANT AND REPRESENT THAT THEY EACH HAVE HAD THE OPPORTUNITY OF REVIEWING THIS JURY WAIVER WITH LEGAL COUNSEL, AND THAT EACH KNOWINGLY AND VOLUNTARILY IRREVOCABLY WAIVES ITS JURY TRIAL RIGHTS.

IN WITNESS WHEREOF, this Note has been executed and delivered by the Borrower as of the date and year first above written.

PRIDE      BUSINESS      DEVELOPMENT
HOLDINGS, INC., a Nevada corporation

95026-2
123052.00102/50336969v.1

6

M. Michael Markow, President

STATE OF California )
) SS:
COUNTY OF Ventura )

The foregoing instrument was acknowledged before me this _12_ day of April, 2007, by M. Michael Markow, president of Pride Business Development Holdings, Inc., ~~who is personally known to me~~ or who has produced evidence satisfactory to me as to his identification.

NOTARY PUBLIC

Sign: Val

[seal]



VAL LOPEZ
Commission # 1557760
Notary Public - California
Ventura County
My Comm. Expires Mar 10, 2009

# EXHIBIT G

## GUARANTY

FOR VALUE RECEIVED, the receipt of which is hereby acknowledged, and to induce Vestal Venture Capital, a New York General Partnership (the "Secured Party"), to enter into an Amended, Restated Consolidated Renewal Promissory Note in the principal amount of One Hundred Seventy Five Thousand Dollars ($175,000.00) a copy of which is attached hereto as Annex A (the "Note") executed by Pride Business Development Holdings, Inc., a Nevada corporation (the "Debtor"), in favor of Secured Party, the undersigned, in his individual capacity (the "Guarantor"), hereby absolutely and unconditionally guarantees to the Secured Party the performance by the Debtor of each and every covenant, agreement and obligation of the Debtor under the Notes, and the related Stock Pledge Agreement, of even date herewith, between the Secured Party and the Debtor, including, without limitation, the payment to the Secured Party (or, if applicable, his executors, administrators or personal or legal representatives or estate or legatees) of all sums due under the Notes at the time such sums shall be due and payable. The obligation of the Guarantor under this Guaranty shall be a direct and primary obligation, and the Secured Party shall not be required to exhaust any of the Secured Party's rights or remedies against the Debtor prior to making any demand on or invoking any of the Secured Party's rights and remedies against the Guarantor. In furtherance of the foregoing, the Secured Party may proceed without notice to the Guarantor. In any action brought by the Secured Party against the Guarantor under this Guaranty, the Guarantor covenants and agrees to pay to the Secured Party all costs and expenses (including attorney's fees) incurred by Secured Party in any such action.

This Guaranty and all rights, obligations and liabilities arising hereunder shall be construed and enforced in accordance with the laws of the State of New York.

This Guaranty shall bind the Guarantor below and the Guarantor's respective successors and assigns, and shall inure to the benefit of Secured Party and its assigns.

IN WITNESS WHEREOF, this Guaranty has been duly executed by the Guarantor on the ____ day of April, 2007.

GUARANTOR

Michael M. Markow

123052.00102/50336970v.1